(Slip Opinion)          OCTOBER  TERM,  2021          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNICOLORS, INC. *v.* H&M HENNES & MAURITZ, L. P.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–915.   Argued November 8, 2021—Decided February 24, 2022

A valid copyright registration provides a copyright holder with important legal advantages, including the right to bring a "civil action for infringement" of the copyrighted work.  17 U. S. C. §411(a).  Petitioner Unicolors, the owner of copyrights in various fabric designs, filed a copyright infringement action against H&M Hennes & Mauritz (H&M).  A jury found in favor of Unicolors.  H&M sought judgment as a matter of law, arguing that Unicolors could not maintain an infringement suit because Unicolors knowingly included inaccurate information on its registration application, rendering its copyright registration invalid. The alleged inaccuracy stemmed from Unicolors having filed a single application seeking registration for 31 separate works despite a Copyright Office regulation that provides that a single application may cover multiple works only if they were "included in the same unit of publication."  H&M argued that Unicolors did not meet this requirement because Unicolors had initially made some of the 31 designs available for sale exclusively to certain customers, while offering the rest to the general public.  The District Court determined that because Unicolors did not know when it filed its application that it had failed to satisfy the "single unit of publication" requirement, Unicolors' copyright registration remained valid by operation of the safe harbor provision provided under §411(b)(1)(A).  On appeal, the Ninth Circuit determined that it did not matter whether Unicolors was aware that it had failed to satisfy the single unit of publication requirement, because the safe harbor excuses only good-faith mistakes of fact, not law.  Unicolors had known the relevant facts, so its knowledge of the law (or lack thereof ) was irrelevant.

*Held*: Section 411(b) does not distinguish between a mistake of law and a mistake of fact; lack of either factual or legal knowledge can excuse

an inaccuracy in a copyright registration under §411(b)(1)(A)'s safe harbor. Pp. 4–9.

(a) The Copyright Act provides that a certificate of registration is valid, even though it contains inaccurate information, as long as the copyright holder lacked "knowledge that it was inaccurate." §411(b)(1)(A). Case law and the dictionary instruct that "knowledge" has historically "meant and still means the fact or condition of being aware of something." *Intel Corp. Investment Policy Comm.* v. *Sulyma*, 589 U. S. ___, ___ (internal quotation marks omitted). Nothing in §411(b)(1)(A) suggests that the safe harbor applies differently simply because an applicant made a mistake of law as opposed to a mistake of fact. If Unicolors was not aware of the legal requirement that rendered information in its application inaccurate, it could not have included the inaccurate information "with knowledge that it was inaccurate." §411(b)(1)(A). Pp. 4–5.

(b) Nearby statutory provisions help confirm that here "knowledge" refers to knowledge of the law as well as the facts. Registration applications call for information that requires both legal and factual knowledge. See, *e.g.*, §409(4) (whether a work was made "for hire"); §409(8) (when and where the work was "published"); §409(9) (whether the work is "a compilation or derivative work"). Inaccurate information in a registration may arise from a mistake of law or a mistake of fact. Nothing in the statutory language suggests that Congress wanted to forgive applicants—many of whom lack legal training—for factual but not (often esoteric) legal mistakes. Moreover, had Congress intended a scienter requirement other than actual knowledge, it would have said so explicitly, as it did in other parts of the Copyright Act. Indeed, cases decided before Congress enacted §411(b) overwhelmingly concluded that inadvertent mistakes on registration certificates— many of which involved mistakes of law—neither invalidated copyright registrations nor disallowed infringement actions. The Court finds no indication that Congress intended to alter this well-established rule when it enacted §411(b). Pp. 5–7.

(c) Those who consider legislative history will find indications that Congress enacted §411(b) to make it easier, not more difficult, for nonlawyers to obtain valid copyright registrations. It did so in part by "eliminating loopholes" that allowed infringers to exploit mistakes in the application process to prevent enforcement of otherwise validly registered copyrights. H. R. Rep. No. 110–617, p. 20. Given this history, it would make no sense if §411(b) left copyright registrations exposed to invalidation based on applicants' good-faith misunderstandings of the details of copyright law. P. 7.

(d) H&M's remaining arguments are unavailing. First, the Court's interpretation of the statute will not allow copyright holders to avoid

the consequences of an inaccurate application by claiming lack of knowledge. As in other legal contexts, courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements. Willful blindness may support a finding of actual knowledge. Additionally, circumstantial evidence may demonstrate that an applicant was actually aware of, or willfully blind to, legally inaccurate information. Second, the legal maxim that "ignorance of the law is no excuse" does not apply in this civil case concerning the scope of a statutory safe harbor that arises from ignorance of collateral legal requirements. Finally, the "knowledge" question that the parties have argued, and which the Court decides, was a "subsidiary question fairly included" in the petition's question presented. See this Court's Rule 14.1(a). And the Ninth Circuit explicitly addressed the knowledge issue when it held that Unicolors' "knowledge" of the facts underlying the inaccuracy on its application was sufficient to demonstrate knowledge under §411(b)(1)(A) without regard to Unicolors' knowledge of the relevant law. Pp. 8–9.

959 F. 3d 1194, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, KAVANAUGH, and BARRETT, JJ., joined. THOMAS, J., filed a dissenting opinion, in which ALITO, J. joined, and in which GORSUCH, J. joined, except as to Part II.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES
———————

No. 20–915
———————

## UNICOLORS, INC., PETITIONER *v.* H&M HENNES & MAURITZ, L. P.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[February 24, 2022]

JUSTICE BREYER delivered the opinion of the Court.

A valid copyright registration provides a copyright holder with important and sometimes necessary legal advantages. It is, for example, a prerequisite for bringing a "civil action for infringement" of the copyrighted work. 17 U. S. C. §411(a). Additionally, a plaintiff in an infringement action normally cannot obtain an award of statutory damages or attorney's fees for infringement that occurred prior to registration. §412.

To obtain registration, the author of a work must submit to the Register of Copyrights a copy of the work and an application. §§408, 409. The application must provide information about the work. §409. Some of this information is purely factual, but some of it incorporates legal conclusions. *Ibid.* If the Register determines that the work is copyrightable and meets other statutory requirements, she will issue a certificate of registration. §410(a). The information on this certificate reflects the information that the copyright holder provided on the application. *Ibid.*

Naturally, the information provided on the application for registration should be accurate. Nevertheless, the Copyright Act provides a safe harbor. It says that a certificate

of registration is valid

> "regardless of whether the certificate contains any inaccurate information, unless—
>
> "(A) the inaccurate information was included on the application for copyright registration *with knowledge that it was inaccurate*; and
>
> "(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." §411(b)(1) (emphasis added).

The important point for our purposes is that a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked "knowledge that it was inaccurate." §411(b)(1)(A).

The question before us concerns the scope of the phrase "with knowledge that it was inaccurate." The Court of Appeals for the Ninth Circuit believed that a copyright holder cannot benefit from the safe harbor and save its copyright registration from invalidation if its lack of knowledge stems from a failure to understand the law rather than a failure to understand the facts. In our view, however, §411(b) does not distinguish between a mistake of law and a mistake of fact. Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration. We therefore vacate the Court of Appeals' contrary holding.

I

The petitioner here, Unicolors, owns copyrights in various fabric designs. App. 50–51. It sued the respondent, H&M Hennes & Mauritz, L.P. (H&M), for copyright infringement. 959 F. 3d 1194, 1195 (CA9 2020). The jury found in Unicolors' favor, but H&M asked the trial court to grant it judgment as a matter of law. *Id.,* at 1196–1197. H&M argued, among other things, that Unicolors' registration certificate was invalid (and that therefore Unicolors

could not sue for infringement) because it contained inaccurate information. *Id.,* at 1197–1198; see also §411(a). Specifically, H&M argued that Unicolors' registration certificate was inaccurate because Unicolors had improperly filed a single application seeking registration for 31 separate works. App. 91–92, 170–172. H&M relied on a Copyright Office regulation, which provides that a single registration can cover multiple works *only if those works were "included in the same unit of publication." Id.,* at 170 (emphasis added); 37 CFR §202.3(b)(4) (2020). H&M argued that the 31 fabric designs covered by Unicolors' single application (and therefore single registration) had not been published as a single unit of publication because Unicolors had initially made some of the designs available for sale exclusively to certain customers, while other designs were immediately available to the general public. App. 170–171. Because the first statutory requirement for invalidating Unicolors' registration (a knowing inaccuracy) was satisfied, H&M argued, the District Court should move to the second requirement and ask the Register of Copyrights whether it would have refused to register Unicolors' copyright if it had been aware of the inaccuracy. *Id.,* at 172–173; see also §§411(b)(1)(B), (b)(2).

The District Court denied H&M's motion. *Id.,* at 202. Among other things, it noted that "a registration remains effective despite containing inaccurate information" if the registrant included the inaccurate information in the registration application without "knowledge that it was inaccurate." *Id.,* at 180–181 (internal quotation marks omitted). Because Unicolors did not know that it had failed to satisfy the "single unit of publication" requirement when it filed its application, the purported inaccuracy could not invalidate the registration. *Id.,* at 182.

The Ninth Circuit disagreed. It agreed with H&M that Unicolors had failed to satisfy the "single unit of publication" requirement (because it offered some of the 31 designs

exclusively to certain customers). 959 F. 3d, at 1198–1200. But did Unicolors *know* about this inaccuracy? In the Ninth Circuit's view, it did not matter whether Unicolors did or did not know that it had failed to satisfy the "single unit of publication" requirement. *Id.*, at 1200. That was because, in the Ninth Circuit's view, the statute excused only good-faith mistakes of fact, not law. *Ibid.* And Unicolors had known the relevant facts, namely, that some of the 31 designs had initially been reserved for certain customers. *Ibid.*

Unicolors sought certiorari, asking us to review the Ninth Circuit's interpretation of §411(b)(1)(A). We granted the petition.

## II

A brief analogy may help explain the issue we must decide. Suppose that John, seeing a flash of red in a tree, says, "There is a cardinal." But he is wrong. The bird is not a cardinal; it is a scarlet tanager. John's statement is inaccurate. But what kind of mistake has John made?

John may have failed to see the bird's black wings. In that case, he has made a mistake about the brute facts. Or John may have seen the bird perfectly well, noting all of its relevant features, but, not being much of a birdwatcher, he may not have known that a tanager (unlike a cardinal) has black wings. In that case, John has made a labeling mistake. He saw the bird correctly, but does not know how to label what he saw. Here, Unicolors' mistake is a mistake of labeling. But unlike John (who might consult an ornithologist about the birds), Unicolors must look to judges and lawyers as experts regarding the proper scope of the label "single unit of publication." The labeling problem here is one of law. Does that difference matter here? Cf. *United States* v. *Fifty-Three (53) Eclectus Parrots*, 685 F. 2d 1131, 1137 (CA9 1982). We think it does not.

Our reasons are straightforward. For one thing, we follow the text of the statute. See *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 251 (2010). Section 411(b)(1) says that Unicolors' registration is valid "regardless of whether the [registration] certificate contains any inaccurate information, unless . . . the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." Both case law and the dictionary tell us that "knowledge" has historically "meant and still means 'the fact or condition of being aware of something.'" *Intel Corp. Investment Policy Comm.* v. *Sulyma*, 589 U. S. \_\_\_, \_\_\_ (2020) (slip op., at 6) (quoting Webster's Seventh New Collegiate Dictionary 469 (1967)); see also Black's Law Dictionary 888 (8th ed. 2004); New Oxford American Dictionary 938 (def. 2) (2d ed. 2005); Webster's New College Dictionary 625 (3d ed. 2008).

Unicolors says that, when it submitted its registration application, it was not aware (as the Ninth Circuit would later hold) that the 31 designs it was registering together did not satisfy the "single unit of publication" requirement. If Unicolors was not aware of the legal requirement that rendered the information in its application inaccurate, it did not include that information in its application "*with knowledge that it was inaccurate.*" §411(b)(1)(A) (emphasis added). Nothing in the statutory language suggests that this straightforward conclusion should be any different simply because there was a mistake of law as opposed to a mistake of fact.

To the contrary, nearby statutory provisions help confirm that here "knowledge" refers to knowledge of the law as well as the facts. Registration applications call for information that requires both legal and factual knowledge. See, *e.g.,* §409(4) (whether a work was made "for hire"); §409(8) (when and where the work was "published"); §409(9) (whether the work is "a compilation or derivative work"). Inaccurate information in a registration is therefore equally

(or more) likely to arise from a mistake of law as a mistake of fact. That is especially true because applicants include novelists, poets, painters, designers, and others without legal training. Nothing in the statutory language suggests that Congress wanted to forgive those applicants' factual but not their (often esoteric) legal mistakes.

Other provisions of the Copyright Act confirm that, in this context, the word "knowledge" means actual, subjective awareness of both the facts and the law. Those provisions suggest that if Congress had intended to impose a scienter standard other than actual knowledge, it would have said so explicitly. See, *e.g.,* §121A(a) (safe harbor for entities that "did not know or have reasonable grounds to know" that exported works would be used by ineligible persons); §512(c)(1)(A) (safe harbor for internet service providers who are not actually aware of infringing activities on their systems and are "not aware of facts or circumstances from which infringing activity is apparent"); §901(a)(8) ("'notice of protection'" requires "actual knowledge . . . or reasonable grounds to believe" that a "work is protected"); §1202(b) (civil remedies for certain acts performed by a person who knows or has "reasonable grounds to know" that he or she was facilitating infringement); §1401(c)(6)(C)(ii) (for purposes of paragraph regarding the "[u]nauthorized use of pre-1972 sound recordings," "knowing" includes one who "has actual knowledge," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in grossly negligent disregard of the truth or falsity of the information"). The absence of similar language in the statutory provision before us tends to confirm our conclusion that Congress intended "knowledge" here to bear its ordinary meaning. See *Nken* v. *Holder*, 556 U. S. 418, 430 (2009).

For another thing, cases decided before Congress enacted §411(b) "overwhelming[ly held] that inadvertent mistakes on registration certificates [did] not invalidate a copyright and thus [did] not bar infringement actions." *Urantia*

*Foundation* v. *Maaherra*, 114 F. 3d 955, 963 (CA9 1997). Many of those cases involved mistakes of law. See, *e.g.*, *id.,* at 961, 963; *Billy-Bob Teeth, Inc.* v. *Novelty, Inc.*, 329 F. 3d 586, 591 (CA7 2003); *Advisers, Inc.* v. *Wiesen-Hart, Inc.*, 238 F. 2d 706, 707–708 (CA6 1956) (*per curiam*). We can find no indication that Congress intended to alter this well-established rule when it enacted §411(b). See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 813 (1989) ("When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts"); see also *Kirtsaeng* v. *John Wiley & Sons, Inc.*, 568 U. S. 519, 538 (2013) (similar).

Further, those who consider legislative history will find that history persuasive here. It indicates that Congress enacted §411(b) to make it easier, not more difficult, for nonlawyers to obtain valid copyright registrations. The House Report states that its purpose was to "improve intellectual property enforcement in the United States and abroad." H. R. Rep. No. 110–617, p. 20 (2008). It did so in part by "eliminating loopholes that might prevent enforcement of otherwise validly registered copyrights." *Ibid.* The Report specifically notes that some defendants in copyright infringement cases had "argued . . . that a mistake in the registration documents, such as checking the wrong box on the registration form, renders a registration invalid and thus forecloses the availability of statutory damages." *Id.,* at 24. Congress intended to deny infringers the ability to "exploi[t] this potential loophole." *Ibid.* Of course, an applicant for a copyright registration—especially one who is not a lawyer—might check the wrong box on the registration documents as a result of a legal, as well as a factual, error. Given this history, it would make no sense if §411(b) left copyright registrations exposed to invalidation based on applicants' good-faith misunderstandings of the details of copyright law.

### III

H&M argues that our interpretation of the statute will make it too easy for copyright holders, by claiming lack of knowledge, to avoid the consequences of an inaccurate application. But courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law. We have recognized in civil cases that willful blindness may support a finding of actual knowledge. *Intel Corp.*, 589 U. S., at ___–___ (slip op., at 11–12). Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information. See *id.,* at ___ (slip op., at 11).

H&M also argues that our interpretation is foreclosed by the legal maxim that "ignorance of the law is no excuse." See Brief for Respondent 41–43. This maxim "normally applies where a defendant has the requisite mental state in respect to the elements of [a] crime but claims to be unaware of the existence of a statute proscribing his conduct." *Rehaif* v. *United States*, 588 U. S. ___, ___ (2019) (slip op., at 8) (internal quotation marks omitted). It does not apply in this civil case concerning the scope of a safe harbor that arises from ignorance of collateral legal requirements. See *ibid.*

Finally, H&M claims that neither Unicolors' petition for certiorari nor the Ninth Circuit's opinion addressed the question we decide here. The petition, however, asked us to decide whether a registration may be invalidated under §411(b) even though there are no "indicia of fraud . . . as to the work at issue in the subject copyright registration." Pet. for Cert. i. Fraud typically requires "[a] *knowing* misrepresentation . . . of a material fact." Black's Law Dictionary 802 (11th ed. 2019) (emphasis added). If, as the Ninth Circuit concluded, §411(b)(1)(A) does not require "knowledge"

of legal errors, then it does not always require knowledge of the misrepresentation in the registration application, and therefore does not require the typical elements of fraud. Thus, the "knowledge" question that the parties have argued, and which we decide, was a "subsidiary question fairly included" in the petition's question presented. See this Court's Rule 14.1(a).

As to the decision below, the Ninth Circuit wrote that "the knowledge inquiry is not whether Unicolors knew that including a mixture of confined and non-confined designs would run afoul of the single-unit registration requirements; the inquiry is merely whether Unicolors knew that certain designs included in the registration were confined and, therefore, were each published separately to exclusive customers." 959 F. 3d, at 1200. In context, we understand this statement to hold that Unicolors' "knowledge" of the *facts* that produced the inaccuracy was sufficient to demonstrate its knowledge of the inaccuracy itself under §411(b)(1)(A). Unicolors' knowledge of the relevant law was irrelevant. The Ninth Circuit therefore explicitly addressed the question we here decide.

\* \* \*

For these reasons, the judgment of the Ninth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–915

_____

## UNICOLORS, INC., PETITIONER *v.* H&M HENNES & MAURITZ, L. P.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[February 24, 2022]

JUSTICE THOMAS, with whom JUSTICE ALITO joins, and with whom JUSTICE GORSUCH joins as to all but Part II, dissenting.

A copyright registration is invalid if the registrant included materially inaccurate information in its application "with knowledge that [the information] was inaccurate." 17 U. S. C. §411(b)(1)(A). In its petition for certiorari, Unicolors asked us to decide a question on which the Courts of Appeals were split: whether §411(b)(1)(A)'s "knowledge" element requires "indicia of fraud." Pet. for Cert. i. Specifically, Unicolors argued that "knowledge" requires "inten[t] to defraud the Copyright Office." *Id.,* at 7.

Yet now, after having "persuaded us to grant certiorari on this issue," Unicolors has "chosen to rely on a different argument in [its] merits briefing." *Visa Inc.* v. *Osborn*, 580 U. S. \_\_\_, \_\_\_ (2016) (internal punctuation altered). It no longer argues that §411(b)(1)(A) requires fraudulent intent and instead proposes a novel "actual knowledge" standard. Because I would not reward Unicolors for its legerdemain, and because no other court had, before today, ever addressed whether §411(b)(1)(A) requires "actual knowledge," I would dismiss the writ of certiorari as improvidently granted.

## I

We should dismiss this case for the reasons we gave in *City and County of San Francisco* v. *Sheehan*, 575 U. S. 600 (2015), and *Yee* v. *Escondido*, 503 U. S. 519 (1992). In *Sheehan*, we granted review to resolve a Circuit split and decide whether the Americans with Disabilities Act requires law enforcement officers to provide reasonable accommodations to armed, violent, and mentally ill criminals while arresting them. 575 U. S., at 608. But after the petitioners' opening brief "effectively concede[d]" that it may and pressed a narrower, "qualified" version of the original argument, *id.,* at 609, we dismissed the case for lack of "adversary presentation" of the question presented, *id.,* at 610. In *Yee*, the petitioner raised an argument that was not clearly pressed or passed upon below, that was not the subject of a known circuit split, and that, in fact, no court in the country had squarely addressed before. See 503 U. S., at 534, 537–538. We declined to "be the first court in the Nation" to decide the petitioner's novel legal question. *Id.*, at 538.

These considerations counsel dismissal here. First, Unicolors has abandoned the actual question presented and now presses novel arguments in favor of reversal. We took this case to resolve an apparent split between the Eleventh Circuit, which has held that §411(b)(1)(A) requires "deceptive intent," *Roberts* v. *Gordy*, 877 F. 3d 1024, 1030 (2017), and the Ninth Circuit, which held below that "there is no such intent-to-defraud requirement," 959 F. 3d 1194, 1198 (2020) (citing *Gold Value Int'l Textile, Inc.* v. *Sanctuary Clothing, LLC*, 925 F. 3d 1140, 1147 (CA9 2019)). Agreeing with the Eleventh Circuit, Unicolors argued in its petition for certiorari that "knowledge" requires "inten[t] to defraud." Pet. for Cert. 7. But now, siding with the Ninth Circuit, Unicolors contends that a mere "knowing failure" satisfies §411(b)(1)(A). Brief for Petitioner 33, 37 (internal quotation marks omitted). The United States, as *amicus*

supporting Unicolors, agrees. See Brief for United States as *Amicus Curiae* 25, n. 5. And, obviously, so does H&M. See Brief for Respondent 1. Thus, no party or *amicus* before us supports the Eleventh Circuit's position. Without "adversary presentation" on the actual question presented, we should dismiss. *Sheehan*, 575 U. S., at 610.

Second, as in *Yee*, Unicolors' new merits-stage arguments present novel legal questions. Unicolors claims that "knowledge" in §411(b)(1)(A) is satisfied only by *actual* knowledge (*i.e.,* an applicant subjectively knew of an inaccuracy) rather than actual or *constructive* knowledge (*i.e.,* an applicant should have known of an inaccuracy). It further contends that a copyright applicant must actually know that it is misapplying a *legal* standard rather than simply misstating the *facts*.

It is undisputed that Unicolors raised neither point below. It is also undisputed that there is no circuit split on either of Unicolors' new arguments. And it is clear that the Court of Appeals did not meaningfully consider these questions. It said nothing about actual versus constructive knowledge, see 959 F. 3d, at 1200, and it merely implied, in a cursory sentence, that §411(b)(1)(A) requires knowledge of facts and not law, see *ante,* at 9 (citing 959 F. 3d, at 1200). Other than this halfway relevant and completely unreasoned statement, the Court cites no other opinion from any court that interprets §411(b)(1)(A). Thus, we are the "first court in the Nation" to decide the important questions that Unicolors belatedly presents. *Yee*, 503 U. S., at 538. I would decline the invitation to take that imprudent step.

The Court disputes none of this. Instead, it reasons that Unicolors' new arguments are "'fairly included'" in the question presented because, even though Unicolors originally proposed a fraud standard, it now argues for at least an element of that standard: actual knowledge of a misrepresentation. *Ante,* at 9 (quoting this Court's Rule 14.1(a)).

The Court misapplies Rule 14.1(a). An argument is

"fairly included" only if it raises a "*prior* question." *Lebron* v. *National Railroad Passenger Corporation*, 513 U. S. 374, 381 (1995). That is, resolving the new argument must be "a predicate to an intelligent resolution of the question presented." *Ohio* v. *Robinette*, 519 U. S. 33, 38 (1996) (internal quotation marks omitted). Here, to decide whether §411(b)(1)(A) requires fraud, we do not *first* need to decide what kind of knowledge fraud requires. To the contrary, it makes more sense to establish the correct legal standard before deciding what satisfies its elements. Cf. *Manuel* v. *Joliet*, 580 U. S. ___, ___–___, n. 1 (2017) (slip op., at 2–3, n. 1) (ALITO, J., dissenting). This case proves the point: Unicolors effectively concedes that §411(b)(1)(A) has no fraudulent-intent requirement and *then* asks us to hold that the provision nevertheless requires actual rather than constructive knowledge, and knowledge of legal and factual misstatements rather than knowledge of factual misstatements alone. Evidently, Unicolors can discern whether the statute requires fraud without addressing those questions. Likewise, the Ninth Circuit has held that §411(b)(1)(A) does not require fraud based on its "plain language." *Gold Value*, 925 F. 3d, at 1147. In reaching that conclusion, the Court of Appeals did not address the actual-versus-constructive-knowledge issue, and it reserved the law-versus-fact issue. See *ibid.* In short, deciding whether §411(b)(1)(A) requires a particular element of fraud is not "prior" to deciding whether fraud is the proper standard in the first place.

But even if Unicolors' arguments were "prior" questions, the Court still misapplies Rule 14.1(a). We are free to address "subsidiary question[s]" in deciding "any *question presented*." This Court's Rule 14.1(a) (emphasis added). Put another way, the subsidiary questions must be "inextricably linked" to the question under review and necessarily contribute to that question's resolution. *City of Sherrill* v. *Oneida Indian Nation of N. Y.*, 544 U. S. 197, 214, n. 8 (2005). Here, though, the Court never answers the ultimate

question about fraud. To provide an incomplete answer to the question presented disserves the public and our fellow judges. The Court does not decide the question that has split the Courts of Appeals, but instead decides a question that no court has addressed. And by granting review of one question but answering another, we encourage litigants "to seek review of a circuit conflict only then to change the question to one that seems more favorable." *Czyzewski* v. *Jevic Holding Corp.*, 580 U. S. \_\_\_, \_\_\_ (2017) (THOMAS, J., dissenting) (slip op., at 2); see also *Yee*, 503 U. S., at 536 (parties would be "encouraged to fill their limited briefing space and argument time with discussion of issues other than the one on which certiorari was granted"). The result is muddled briefing on questions we did not agree to resolve, and a ruling that bypasses the ordinary process of appellate review.

## II

In this case, the Court's misstep comes at considerable cost. A requirement to know the law is ordinarily satisfied by constructive knowledge, cf. *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich, L. P. A.*, 559 U. S. 573, 584 (2010), because "actual knowledge of illegality" can be "difficult or impossible" to prove, *Ratzlaf* v. *United States*, 510 U. S. 135, 162 (1994) (Blackmun, J., dissenting). Yet here, the Court imposes an actual-knowledge-of-law standard that is virtually unprecedented except in criminal tax enforcement. See *Cheek* v. *United States*, 498 U. S. 192, 201–203 (1991). And while the Court claims the word "knowledge" in §411(b)(1)(A) compels this conclusion, see *ante,* at 5, that result is far from certain. In *Cheek*, this Court required actual knowledge of law in light of a "willfulness" requirement. 498 U. S., at 201–202. A "knowledge" requirement, by contrast, often encompasses actual *and* constructive knowledge. See *Intel Corp. Investment Policy Comm.* v. *Sulyma*, 589 U. S. \_\_\_, \_\_\_–\_\_\_ (2020) (slip op., at 6–7).

Moreover, as the Court recognizes, the other knowledge requirements in the Copyright Act are satisfied by either kind of knowledge. See *ante,* at 6. The Court points to no other Copyright Act provision that is satisfied by actual knowledge alone. That the Court reads §411(b)(1)(A) to be the lone exception is dubious. That the Court does so without permitting any other court in the country to first consider the question is unwise.

*      *      *

I would dismiss the writ of certiorari as improvidently granted because Unicolors has abandoned the question presented and instead proposes novel questions of copyright law that no other court addressed before today. I respectfully dissent.